May Term,
1855.

CHASE
v.
KENDALL.

CHASE *v.* KENDALL.

In reviewing a decision of the Circuit Court, upon the mere weight of evidence, every reasonable intendment is to be indulged in favor of the verdict, and the decision will not be reversed if it can be sustained by any fair construction of the testimony; but if, upon a careful review of the evidence, the judgment can not be reconciled with the proof, it will be reversed.

After the dissolution of a partnership the firm is not bound by the new contracts of a partner, although he was authorized to settle the business of the firm; nor has a partner a right, without the consent of his co-partner, express or implied, to appropriate the property or effects of the firm to his separate use.

*A., B.* and *C.* being partners, *C.* retired from the firm, and the business of the firm was wound up by *A.* and *B.* The firm, and also *A.* and *C.* individually, were indebted to *D.* and *E.*, another firm, and the latter, as partners and also individually, were indebted to the firm of *A., B.* and *C.* After *C.'s* retirement from the last-named firm, *A.*, in a settlement with *D.*, in which the said several individual and partnership accounts of the parties were blended, gave a note payable to *D.* and *E.*, in the name of the firm of *A., B.* and *C.*, for a balance found due, upon the accounts thus blended, to *D.* and *E.* *B.* afterwards paid part of the note and repeatedly promised to pay the balance. *Held*, that *B.* thereby ratified the act of *A.*, and that *A.* and *B.* were liable for the payment of the note.

Tuesday,
June 5.

APPEAL from the *Tippecanoe* Circuit Court.

GOOKINS, J.— *Chase*, as the assignee of *Robinson*, brought suit before a justice of the peace against *George Merkle* and *Francis G. Kendall*, on a promissory note signed *Merkle, Kendall & Co.*, dated *March* 24, 1842, for 149 dollars and 39 cents. There were two credits on the note, one of 50 dollars, and the other of 15 dollars. Process was not served upon *Merkle*. *Kendall* pleaded the general issue under oath. The plaintiff obtained a judgment before the justice, from which the defendant appealed to the Circuit Court, where there was a trial by the Court, finding for the defendant, motion for a new trial overruled, and judgment. *Chase* appeals.

From the evidence, all of which is embodied in the record, it appears that previous to *October*, 1840, *George Merkle, Jacob Merkle* and *Francis G. Kendall*, the appellee, had been partners in the business of merchandising at *Delphi*. About that date *George Merkle* bought out the interest of *Jacob Merkle*, who withdrew from the firm.

There is some conflict in the evidence as to whether *George Merkle* and *Kendall* continued business together after the dissolution of the firm by the withdrawal of *Jacob Merkle;* but they were embarrassed, and little, if anything, was done except to wind up the business of the partnership, which was done by *George Merkle.* *Allen* and *Robinson* were partners in the practice of law, and transacted business for the firm, and for *George* and *Jacob Merkle* individually, and for them jointly; all of which they charged to the firm. *Allen* and *Robinson* were jointly and each separately indebted to *Merkle, Kendall & Co.*, for goods, and for moneys received in the course of their business.

On the 24th of *March*, 1842, *Allen* and *Robinson* having previously dissolved, *Robinson* and *George Merkle* had a settlement of the accounts of both firms, in which *Robinson* charged *Merkle, Kendall & Co.* with all fees and services rendered to the firm, and to *George* and *Jacob Merkle* individually, and *George Merkle* charged *Allen* and *Robinson* with the accounts of the firm against each of them separately, as well as their account against them jointly; and for the balance found due upon so adjusting the accounts, he gave *Robinson*, in his own name, the note sued on. *Robinson* testifies that *Kendall* often promised to pay the note, and paid 15 dollars on it, which is credited *August* 9, 1842, at which time he promised to pay the balance soon. *Jacob Merkle* testified that he knew nothing of the giving of the note until two years after its date, when *Robinson* called on him for payment, and he refused to recognize it. *Allen* testified that *Allen* and *Robinson* charged the firm of *Merkle, Kendall & Co.* with all services rendered to any member of the firm, but frequently designated on their books for whom the service was rendered, to enable them to arrange the matter among themselves; that of their account, amounting to 417 dollars and 50 cents, the sum of 110 dollars was for services rendered to *George Merkle*, and 40 dollars for services rendered to *George* and *Jacob Merkle*, in which *Kendall* was not interested. On the other side, *George Merkle*, acting for his firm, charged *Allen* and *Robinson* with the private

account of *Allen*, amounting to 49 dollars and 81 cents, of *Robinson*, 10 dollars and 32 cents, and an account in favor of *Kendall* against *Allen*, assumed by *Merkle, Kendall & Co.*, of 5 dollars and 23 cents. The residue of the accounts, on both sides, were properly chargeable to the respective firms. He further stated that when *Allen* and *Robinson* dissolved, the latter took their books and collected what was due upon them, and he had not seen them since; that *George Merkle* settled the business of their firm, but that he did not attend to business much after 1840, having become dissipated, worthless and insolvent; that the dissolution of *Merkle, Kendall & Co.* was known to *Allen* and *Robinson;* that they supposed the goods they got of the firm were paid for in the way of services; that he, as the administrator of an estate, paid *Kendall* 15 dollars, which he paid to *Robinson* on the note, knowing it to be the money of the firm, the three being together; and that the keeping of the books of *Allen* and *Robinson* by the latter, was not with his consent expressly given, though he had an equal right to them.

In reviewing a decision made in the Circuit Court, upon the mere weight of evidence, every reasonable intendment in favor of the verdict is to be indulged, and we do not feel justified in reversing a decision which can be sustained upon any fair construction of the testimony; but after having carefully reviewed the evidence in this case, we are unable to see how the judgment below can be reconciled with the proof.

We do not intend to question the well-settled doctrine, that after the dissolution of a partnership the firm is not bound by the new contracts of a partner, although authorized to settle the business of the firm. *Yandes* v. *Lefavour*, 2 Blackf. 371.—*Hamilton* v. *Seaman*, 1 Ind. R. 185. Nor has one partner a right, without the consent of his copartner, express or implied, to appropriate the property or effects of the firm to his separate use. Story on Partnership, s. 102, note.—*Id.*, s. 132. In the settlement between *George Merkle* and *Robinson*, which resulted in the giving of the note which is the foundation of this action, two

May Term,
1855.

CHASE
v.
KENDALL.

partnership transactions were attempted to be adjusted, one by *Robinson* as the partner of *Allen*, and the other by *Merkle* as a partner of the firm of *Merkle, Kendall & Co.* On the part of the latter, there can be no doubt, from the evidence, that they were bound by the transaction. *Jacob Merkle* had withdrawn from the firm, and, as he testifies, had sold his interest in the concern to *George Merkle.* The repeated promises of *Kendall* to pay the note, and the actual payment of 15 dollars upon it, the first proved by the plaintiff's witness, and the last by the witnesses of both parties, amount to a ratification of the unauthorized act of *George Merkle* by *Kendall.* The act, of course, bound *George Merkle*, and there was no attempt to enforce the note against the retired partner.

On the other side, the evidence shows, if not an authority on the part of *Robinson* from his partner *Allen*, at least a ratification by the latter of his acts. *Allen* testifies that *Robinson* took the books and collected the debts due the firm, to which it appears he made no objection; and we can not imagine that a practising attorney, who was of course fully aware of his rights, would stand by and permit his co-partner to appropriate the entire effects of the concern to his own use without authority or right. He states his understanding, also, that the private accounts of himself and *Robinson* were paid for in the services they were rendering. This shows that so far as the accounts were concerned, they were settled according to the understanding of *Allen*, and it furnishes a strong implication that *Robinson* had authority to make the settlement in the manner it was done. If the case rested here, however, we should not disturb the verdict. But *Allen* testifies that he and *Kendall* and *Robinson* were together at a Probate Court, when he, as the administrator of an estate which was indebted to *Merkle, Kendall & Co.*, paid *Kendall* 15 dollars, which *Kendall* there paid *Robinson on the note.* To this there is no pretence that any objection was made. If *Robinson* had no right to receive the money on the note, it would have been a fraud upon *Merkle, Kendall & Co.* for *Allen* to stand by, and without objection let the money

be so paid.    Suppose *Allen* and *Robinson* were to sue them on the account, and this fact were proved; can it be doubted that it would defeat a recovery?    We think it was a ratification; and we are not able to resist the conclusion that although the settlement made by *George Merkle* and *Robinson* may possibly have been unauthorized, the transaction was ratified by *Kendall* on one side, and by *Allen* on the other.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, with instructions to the Circuit Court to grant the plaintiff a new trial on the payment of the costs in the Circuit Court.

*H. W. Chase*, for the appellant.

*G. S. Orth* and *E. H. Brackett*, for the appellee.