REVERSED AND REMANDED.

---

ED. PEFFERLING v. THE STATE.

1. In a prosecution for rape, the character of the prosecutrix for chastity may be impeached by general evidence of her reputation, and not by evidence of particular instances of unchastity; nor can she be interrogated as to a criminal connection with any other person except as to her previous intercourse with the prisoner himself; nor is such evidence of other instances admissible.

2. While recent complaints by the person injured, her state and appearance,

marks of violence, and the condition of her dress, shortly after the alleged injury, may be proven as original evidence, it is error to admit as such the particulars of the complaint and the detailed statements of the injured party. Such testimony is limited to the purpose of supporting the veracity and accuracy of the prosecuting witness, if attacked.

3. See facts held insufficient to justify a charge alone upon the offense of rape, omitting the distinctions between such crime and the minor offenses included in the indictment.

4. In all cases of felony it is the duty of the court, whether asked or not, to give a written charge distinctly setting forth the law applicable to the case as made by the indictment and facts.

5. To constitute an assault with intent to commit rape, there must be an intent, where force is used, to accomplish thereby the carnal knowledge of the woman by such force and against her consent.

6. See this case for discussion of the offenses included under the charge of assault with intent to commit rape.

APPEAL from Bexar. Tried below before the Hon. George H. Noonan.

Pefferling was indicted for an assault with intent to commit a rape upon one Mary Zinck.

The prosecuting witness testified, in substance, that one Sunday, in San Antonio, about 4 o'clock in the afternoon, defendant, a hackdriver, accosted her on the streets, and offered to take her home; he said he was passing that way to the San Pedro Springs; witness said she had no money, but defendant said as he was going by her father's he would not charge her. She entered the hack, and at once the defendant drove rapidly off, and soon she noticed that he was not going in the direction of her father's; when she remonstrated and asked him to stop and let her get out, defendant assured her that he would take her home by the nearest route. This he did not do, but drove out of the city and into mesquit bushes or chaparral; stopped his hack; witness got out; defendant pursued and caught her, threw his arms around her, etc.; struggling, her hat fell off, and the horses in the hack started; defendant desisted and caught the horses; in the interval witness ran; defendant pursued

in the hack, trying to drive her down; she escaped by running behind mesquit bushes from time to time; she met a Mexican woman, by whose aid she got home; she made a statement of the affair to her brother and father.

The brother, as witness for the State, detailed the account as given by herself, over objection of the defendant.

On the cross-examination of the prosecuting witness, the defendant asked her, "Did you not, either in the month of July or August, 1873, drive in defendant's hack with one M. Neuendorff, after dark, to the same place where the alleged assault took place?" To this the district attorney objected, and defendant stated his object, and that he intended by said question to lay the predicate for proof that the character of the prosecutrix as to chastity was bad, and that on certain particular occasions she had had connection with other men. The objection to the question was sustained, and the testimony excluded.

The court in the charge gave the statutory definition of "assault," and "assault and battery," and of "rape," and proceeded—

"6. If you believe from the evidence that defendant made an assault upon Mary Zinck, and that said assault was committed with the intent to commit a rape, as charged in the indictment, you will find the defendant guilty.   *    *    *    *    *    *    *

"7. All persons are entitled to equal protection before the law; and it matters not what may have been the previous character of the woman, she cannot be assaulted with impunity; and where the law does not discriminate, you as a jury cannot; hence an assault upon any woman with the intent to commit a rape is a crime, and the person making the assault is amenable to the law."

The jury found the defendant guilty, and fixed his punishment at two years in the penitentiary. Motion for new trial was overruled, and defendant appealed.

Errors assigned are as follows:

"1. Refusal of the court to allow defendant to prove the general character of the prosecutrix.

"2. The court erred in proclaiming at the trial, in the presence of the jury, that the character of the prosecutrix for chastity could not be impeached.

"3. The court erred in refusing the defendant to ask the prosecutrix, in cross-examination, whether she had not on a previous occasion gone with one Neuendorff, after dark, and in defendant's hack, to the same place where the alleged assault took place.

"4. In permitting her brother to detail in full, in behalf of the State, in his examination-in-chief, the account given by the prosecutrix of the affair on the night of the alleged assault.

"5. In giving the charge No. 7 (as above set forth), thereby excluding from the consideration of the jury the character and previous condition of the prosecutrix," etc.

"6. In not charging the different grades of the offense, and in not charging the jury that they might convict for a less offense."

*Robinson, Altgelt & Portis*, for appellant, cited Wharton's Criminal Law, Sections 1149, 1150, 1151, 1152; 1 Russell on Crime, 688, 689; Paschal's Digest, Articles 2156, 2160; 35 Texas, 584; Simonton v. Forester; Id., 434, Harten v. Courtade.

*Geo. Clark, Attorney-General*, for the State, cited 13 Texas, 176, Jones v. Jones.

MOORE, ASSOCIATE JUSTICE.—Unquestionably, in trials for rape, or assaults with intent to commit rape, the character for chastity of the female alleged to have been injured may be impeached, not as evidence of justification or excuse for the offense, but for the purpose of raising the presumption that she yielded her assent, and was not

in fact forced.   And this presumption, it is said, will be stronger or weaker according to the degree of prostitution or degradation established by the evidence.   If, therefore, the record showed that the court had ruled as alleged in the first, second, and first paragraph of the fifth assignments of errors, the judgment should, beyond doubt, be reversed.   But it is by no means clear that any such ruling as complained of in these assignments was made. Certainly the instructions given to the jury are not, in this particular, justly subject to criticism or objection.   The obvious import and purpose of that portion of the charge referred to in the fifth assignment of errors was to instruct the jury that the character of the female assaulted, however base or infamous, was neither a justification of the offense charged nor a bar to its prosecution.   If there was any such ruling as complained of, the only evidence of it in the record is contained in appellant's first bill of exceptions, and we must infer it, not from the ruling sustaining the objection to the question set forth in the bill, but from the new reasons given in the bill why appellant desired to propound the particular question, to which the objection by appellee was sustained by the court.   But as the question propounded in no way tends to put in issue the character of the witness to whom it was addressed, and as unquestionably no predicate need be laid for the introduction of general testimony impeaching the character of the female charged to be injured, it is by no means clear that the ground assumed in the assignment of errors is the one upon which this ruling of the court was made, or that it was so understood by the jury.

If, however, it is admitted that the question to which objection was made was rejected by the court because intended, as stated in the bill of exceptions, as a predicate for proof of such fact as therein indicated, it is by no means certain that it was admissible.   Although it has not been unquestioned in some of the subsequent de-

cisions, the case of Rex v. Hodgson, 1 Russ. & Ryan; 211, decided in 1812 by the twelve judges, has been generally regarded in England as having definitely settled in the negative the right of the defendant to interrogate the female alleged to have been outraged as to whether she had not before had connection with other persons, or with a particular person named, or even to prove by other witnesses particular facts or acts of lewdness not connected with the matter before the court. The contrary is held by the Supreme Court of New York in case of The People v. Abbott, 19 Wend., 192, and perhaps in other cases which have not fallen under our observation. But the weight of authority seems to justify the conclusion of Mr. Greenleaf, who says: "The character of the prosecutrix for chastity may be impeached, but this must be done by general evidence of her reputation in that respect, and not by evidence of particular instances of unchastity. Nor can she be interrogated as to a criminal connection with any other person except as to her previous intercourse with the prisoner himself; nor is such evidence of other instances admissible." The inquiry is for the purpose of proving character, and it would operate a surprise if an inquiry as to particular instances of immorality or intercourse with particular persons was permitted to establish the character of the witness, who, as has been said, cannot be supposed to come prepared to defend her character, except against a general attack. (Rex v. Clark, 2 Stark. Rep., 241; Baker's case, 2 Carr. & P., 588; The State v. Jefferson, 6 Ind., 305; Camp v. The State, 3 Kelly, 417; Pleasant v. The State, 15 Ark., 624; McCombs v. The State, 8 Ohio St. R., 643; McDermott v. The State, 13 Id., 332; The State v. Fisher, 43 N. H., 89; Wilson v. The State, 16 Ind., 392; 3 Green. Ev., Sec. 214; 1 Id., Sec. 458; 1 Phill. Ev., 468; 2 Id., 419; 2 Stark. Ev., 591; Whart. Cr. Law, Sec. 1152.)

The objection to the introduction by the State as origi-

nal evidence, on the examination-in-chief, of the particulars of the statement made by the prosecutrix to her brother, was well taken and should have been sustained. In prosecutions of this character, the proof of the offense depends very frequently upon the testimony of the party charged to have been outraged, and in most cases, to a very great extent, upon the truth and credibility of her evidence, and unquestionably every reasonable test should be applied to her integrity, for the safety of the accused. Hence, the failure to make outcry, or call for aid when it might have been readily obtained, or within reasonable time to discover the offense after an opportunity to do so, are circumstances tending to discredit her testimony. But if the absence of these circumstances tend to raise the presumption that her testimony is false or feigned, proof of them repels the suspicion which their absence raises. It has, therefore, been universally held that recent complaint by the person injured, her state and appearance, marks of violence, and the condition of her dress, shortly after the alleged occurrence, may be proved as original. evidence, although it has been otherwise held in Ohio and Tennessee. (McCombs v. The State, 8 Ohio, 643; Johnson v. The State, 17 Ohio, 593; Phillips v. The State, 9 Humph., 246.)

It is, we think, well established, by reason as well as the great weight of authority, that proof of the particulars of the complaint, and the detailed statement of the alleged facts and circumstances connected with it, as was permitted in this case in the court below, cannot be admitted as original evidence to prove the truth of the statements testified to by the injured party, or to establish the charge made against the prisoner. Their admissibility on behalf of the State is limited to the purpose, in rebuttal, of supporting the veracity and establishing the accuracy of the testimony of the prosecuting witness. (1 Green. Ev., Sec. 102; 3 Id., Sec. 213; 1 Russ. on Crime, 688; 1 Stark.

Ev., 951; Whart. Am. Cr. Law, 245, 441, 1150; Roscoe
Cr. Ev., 863; 1 Phill. Ev., 19; The Queen v. Myson, 9
Carr. & Payne, 420; Rex v. Clark, 2 Stark. Rep., 241; Ste-
phens v. The State, 11 Ga., 225.; People v. McGee, 1
Denio, 19; Wilson v. The State, 16 Ind., 392; Boggy v.
Commonwealth, 10 Gratt., 722.)

In all cases of felony it is the duty of the judge,.
whether it is asked or not, to deliver to the jury a written
charge, in which he shall distinctly set forth the law ap-
plicable to the case. (Code Crim. Pro., Art. 594; Maria
v. The State, 28 Texas, 711.) The charge given to the
jury in this case does not, in our opinion, fully comply with
this requirement of the code. Under the indictment ap-
pellant might have been convicted of an aggravated as-
sault, if the jury believed, from the evidence, that such a
verdict would be more in consonance with the truth of
the case than would the verdict for the more heinous
crime of which they found appellant guilty. (Code Crim.
Pro., Art. 498.) And while we are not called upon to do
so, and are not to be understood as intimating any opinion
as to the verdict which should have been returned, we
think the facts of the case are not such as to limit the jury
to a single aspect of it, as seems to us to have been, in
effect, done by the instructions.

Rape, as defined by the code, "is the carnal knowl-
edge of a woman without her consent, obtained by force,"
etc. And to constitute the crime of assault with intent
to commit rape, there must be an intent, where force is
the means by which the purpose is to be accomplished,.
that the carnal knowledge of the woman, without her
consent, shall be accomplished by reason or means of the
assault. Obviously there is a manifest distinction be-
tween *an assault to commit a rape*, and *an assault with
an intent to have an improper connection*. Any such
violent or indecent familiarity with the person of a female
against her will, when the latter is the extent of the pur-

pose and intent of the aggressor, is an aggravated assault, and should be punished as such. But whatever may be the cause, or brutally obscene character of the assault, if it appear from the evidence that it was not the object or intent of the aggressor to accomplish his desired purpose by force, against the will and without consent, then the more aggravated offense has not been committed.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.