[Crim. No. 9. Second Appellate District.—June 12, 1905.]

## THE PEOPLE, Respondent, v. J. W. HEART, Appellant.

CRIMINAL LAW—JURISDICTION OF COURTS OF APPEAL—QUESTIONS OF LAW—SUPPORT OF VERDICT.—By the constitution, jurisdiction is conferred upon the district courts of appeal in criminal prosecutions by indictment or information in a court of record on questions of law alone. Where there is some evidence to sustain the verdict, there can be no question of law as to its sufficiency.

ID.—MURDER—SUPPORT OF CONVICTION IN SECOND DEGREE.—Upon a trial for murder where the defendant was convicted of murder in the second degree, held, in view of the evidence, that it cannot

be said as matter of law that the killing was done "upon a sudden quarrel or heat of passion," or that there was no evidence of the "abandoned and malignant heart" constituting one of the elements of murder in the second degree.

Id.—Evidence—Impeachment of Defendant's Wife—Statement of Knowledge to Attorney—Communication not Privileged.—Upon cross-examination of defendant's wife as a witness for defendant it was proper on cross-examination to lay the foundation for impeaching evidence by an attorney to whom she stated her knowledge of the transaction, while endeavoring, without success, to retain him as counsel for the defendant. Such statement is not a privileged communication under section 1881 of the Code of Civil Procedure.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. B. N. Smith, Judge.

The facts are stated in the opinion of the court.

L. C. Hester, Hester & Ladd, A. Groves, and James D. Reymert, for Appellant.

U. S. Webb, Attorney-General, J. C. Daly, Deputy Attorney-General, and W. C. Van Fleet, for Respondent.

ALLEN, J.—The defendant under an information charging him with murder pleaded not guilty. Upon a trial he was found guilty of murder in the second degree, and sentenced to the state prison for the term of twenty years. He appeals from the judgment and from the order denying a new trial.

Appellant relies for the reversal of the order and judgment upon the grounds that the evidence is not sufficient to justify a verdict in the second degree, and for errors in admission of certain testimony and in instructions to the jury.

The record discloses that there was some testimony tending to show defendant's guilt in the degree as found by the verdict. By the constitution appellate jurisdiction is conferred upon this court in criminal prosecutions by indictment or information in a court of record on questions of law alone. When there is evidence, therefore, to sustain the verdict a question of law cannot arise. (*People* v. *Fitzgerald,* 138 Cal. 40, [70 Pac. 1014].)

It was shown that a heated quarrel was had between defendant and his roomer, Kearns, concerning a balance of fifty cents due for rent, as claimed by defendant and denied by Kearns. Kearns was about to leave defendant's house, and had packed his personal effects for that purpose, when defendant appeared and demanded the fifty cents. The deceased presented a receipt for rent to July 8th; this was July 2d. Defendant charged deceased with changing the receipt. Kearns thereupon becoming loud and violent in his language, defendant left the scene of the quarrel declaring that he would call the police. Some fifteen or twenty minutes later he returned without the police, but with a pistol in his right-hand coat pocket. He advanced across the room and locked the back door of one of the rooms from which deceased was getting ready to leave. He did this, he says, as a preliminary step to distraining the goods of his roomer for the delinquent fifty cents. Kearns thereupon assaulted him with his fists, and in the scuffle which ensued the defendant shot Kearns in the stomach. There was evidence tending to show that Kearns was unarmed. In this state of the evidence it was for the jury to determine whether defendant returned to the scene of the quarrel simply to lock the door and distrain the goods, or whether, knowing that Kearns was disposed to fight, the defendant armed himself for the purpose of returning and renewing the quarrel with a view of precipitating a final struggle and killing his antagonist. It must have been plain to defendant from the previous conduct of his roomer that any attempt to wrest from his possession either the rooms or the goods would result in a fight. His taking the pistol with him shows that it was his purpose to bring that fight to a conclusion in his favor, even if he had to kill his antagonist. On this statement of the case we are not prepared to say that the killing was done "upon a sudden quarrel or heat of passion." Nor can we say as a matter of law that there was no evidence of the "abandoned and malignant heart" constituting one of the elements of murder in the second degree. (See *People* v. *Emerson*, 130 Cal. 563, [62 Pac. 1069].)

The wife of the defendant was called as a witness by the defense, and the court permitted the district attorney to interrogate her as to statements made by her to H. H. Appel,

Esq., an attorney, at a time when she was endeavoring to retain him as counsel for her husband. This for the purpose of laying grounds for impeachment. The court further permitted Appel to state what was said by the witness to him upon that occasion. There is no claim that Appel was ever employed or retained. On the contrary, the testimony shows that he declined to accept employment. Section 1881 of the Code of Civil Procedure (subd. 2) provides that "An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment." The court committed no error in admitting this testimony. The inhibition does not extend to communications between the attorney and persons having social or business relations with the client. Certainly not, when the statement did not purport to be conveyed to the attorney from the client, but, on the contrary, was the representation of a witness as to her knowledge of the transaction.

The charge of the court excepted to correctly states the law upon the subject to which it relates. Reading the whole charge, it is manifest that the word "may," and not "must," was employed, which is emphasized when we consider that the word "must" appears in brackets, with the notation following that "words in brackets were stricken out by the court."

Judgment and order affirmed.

Gray, P. J., and Smith, J., concurred.