[Crim. No. 194. Third Appellate District.—November 27, 1912.]

## THE PEOPLE, Respondent, v. PHILLIP ROSELLE, Appellant.

CRIMINAL LAW—MURDER—CONVICTION OF MANSLAUGHTER—SUPPORT OF VERDICT—CIRCUMSTANTIAL EVIDENCE—TESTIMONY AS TO SELF-DEFENSE—PROVINCE OF JURY.—Where the defendant charged with murder, was convicted of manslaughter, and there was circumstantial evidence that defendant killed the deceased, though the only witnesses to the homicide were the deceased and the defendant, who testified that the killing was in self-defense, the jury may believe the evidence as to the killing, and disbelieve it as to the self-defense,

and may judge whether, on defendant's own story, and under the instructions of the court, the defendant was justified in self-defense in going to the extremity of killing the deceased; and its verdict of manslaughter is sufficiently supported.

Id.—Instruction as to Manslaughter not Prejudicial—Inapplicable Rule.—The rule that an instruction as to manslaughter may be refused, at defendant's request, if the evidence is all one way as to his guilt of murder, has no application to the converse, where the instruction as to manslaughter, under a·charge of murder, is made at the request of the prosecution, and cannot be prejudicial to the defendant in giving latitude to the jury, which resulted in defendant's advantage.

Id.—Instruction not for a Compromise Verdict—Claim of Self-defense.—The instruction as to manslaughter cannot be said to have been an invitation to the jury to render a compromise verdict on account of the defendant's claim of self-defense. The instruction did not interfere with the liberty of the jury to acquit the defendant, if they believed such claim to be true. But they may have decided that the defendant was not justified in killing the deceased, even if he were in some degree the aggressor.

Id.—Misconduct of Juror as to Apparent Sleep not Shown—Duration not Proved—Presumption.—It is held that the alleged misconduct of a juror as to apparent sleep in the jury box, is not sufficiently shown where the duration of his apparent condition was not proved. It cannot be presumed that it was of such a length of time as to have prevented his understanding of the testimony given.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

W. D. L. Held, and T. J. Weldon, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Upon an information charging defendant with murder for the killing of one Erick Nilsen, the jury returned a verdict as follows: "We, the jury, find the defendant guilty of manslaughter, and we strongly recommend him to the mercy of the court." Before judgment, defendant made application for a new trial, which being denied,

judgment·was pronounced, and an appeal taken from both the order and judgment.

We quote from appellant's brief: ''Three propositions are advanced by appellant, demanding a reversal herein: First, we contend that there is no evidence in the record to sustain the verdict and judgment; second, the trial court erred in giving to the jury an instruction on the question of manslaughter; and, third, the defendant was deprived of his constitutional right to a trial by jury by reason of misconduct of one of the jurors, in that during a portion of defendant's cross-examination of one of the witnesses for the People, such juror was asleep.''

1. There was evidence, in its nature circumstantial, that defendant killed the deceased. In addition to this evidence, defendant testified in his own behalf admitting that he shot and killed deceased, claiming that it was in self-defense. The point made is that ''the evidence for the defense was a connected whole, no portion of it could stand unless it all stood; to adopt a part demanded that credence be given to all, and to discredit one circumstance detailed forbade credit to any other,'' and hence the verdict cannot stand. That is to say, the jury having believed defendant's testimony that he killed the deceased, they were also bound to believe him that it was done in self-defense. The jury were under no such constraint. They had the right to judge from all the narrated circumstances what part of defendant's story should be credited and what part disbelieved. They had the right to say whether, on his own statement of the facts and under the instructions of the court on that subject the defendant was justified, in self-defense, to go to the extremity of killing the deceased.

In *People* v. *Sherman*, 103 Cal. 409, [37 Pac. 388], it was held that the defendant, who was accused of murder and was convicted of manslaughter, was entitled to a new trial where the evidence, without conflict, showed that the killing was justifiable. Defendant relies on this case on the assumption that the justification in the case cited, shown by the witnesses who were present and saw the killing, also appeared in the present case. This is on the further erroneous assumption that the jury were bound to give credit to all of

defendant's testimony. The jury, as we have seen, were not so required to do.

2. Upon the second point, it is stated in his brief: "Defendant has either justified the killing or he has not, for no mitigating circumstances were shown. This being so, defendant is either guilty of murder or he is not guilty, and the court was not warranted in instructing the jury that a verdict of manslaughter might be rendered." It has been held that where the defendant requested such an instruction it was not error to refuse it. *People* v. *Lee Gam,* 69 Cal. 553, 555, [11 Pac. 183]; *People* v. *Chavez,* 103 Cal. 407, [37 Pac. 389], and other cases. But such ruling was based on the fact that the evidence was all one way and pointed to no other conclusion than of guilt as charged. The converse does not follow, as claimed, for the all sufficient reason that by giving the instruction the defendant was not prejudiced. On the contrary, the jury were given latitude which resulted to defendant's advantage.

There was evidence that defendant and deceased were not on friendly terms; that both of them had been drinking the early part of the night of the homicide which occurred about half past nine o'clock when both were on their way home; there was also evidence that the reputation of defendant for peace and quiet in the neighborhood was good. An examination of the entire record discloses some ground for the conclusion reached by the jury. There was no witness to the homicide except the defendant and the deceased.

The jury were at full liberty to acquit the defendant if they believed that he was justified in taking the life of deceased. The instruction cannot be said to have been an invitation to render a compromise verdict. The jury may have decided that, while the deceased was, in some degree, the aggressor, the defendant was not justified in killing him.

3. The only support given to the claim of misconduct by a juror is found in the affidavit of W. D. L. Held, one of defendant's attorneys, which is as follows: "That on the 18th day of June, 1912, and while testimony was being taken in said case, affiant observed that one of the jurors was asleep in the jury-box, that Clarence Ylitalo, a witness on behalf of the prosecution, was at said time under cross-examination; that affiant has no knowledge of the duration of the time

during which said juror was asleep; that the judge of this court, presiding at said trial, before affiant had an opportunity to call his attention to the condition of said juror, admonished the jury that all of them should remain awake, and thereupon declared a recess of said court.''

Without doubt the defendant was entitled to the undivided attention of every juror while evidence was being taken in the trial. But we do not think the facts appearing in the affidavit of Mr. Held are sufficient to show that the juror's condition was other than momentary, or that he failed to hear any question and answer of material importance. The juror's name is not given nor was he asked whether he heard the testimony. He was not given an opportunity to explain, what may have been the fact, that his eyes were closed but that he was not asleep. The affidavit shows that the duration of the juror's condition was not known, and we cannot presume that it was of such length of time as to have prevented his understanding the testimony being given.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 22, 1913.